Ryan Milun (Bar No. 043412006)
**THE MILUN LAW FIRM, LLC**
20 Commerce Drive, Suite 135
Cranford, New Jersey 07016
Phone: 862-702-5010 ext. 1001
ryan.milun@milunlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br>  vs.<br><br>UNITED HEALTHCARE; OXFORD HEALTH INSURANCE, INC.,<br><br>    Defendant. | CIVIL ACTION NO.:<br><br>**COMPLAINT** |

Plaintiff, with a resident address in Randolph, New Jersey, for her complaint against defendants United Health Care and Oxford Health Insurance, Inc. (collectively "UHC"), states:

**PRELIMINARY ALLEGATIONS**

1. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for health benefits under an employee benefit plan regulated and governed under ERISA.

2. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan and enforcing plaintiff's rights under the terms of an employee benefit plan.

3. Plaintiff seeks relief, including but not limited to payment of health benefits, prejudgment and post judgment interest, statutory penalties, and attorney's fees and costs, all as allowed under ERISA.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action under 28 USC §1331 and under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §1132 as this action involves a claim by plaintiff for benefits under an employee benefit plan regulated and governed under ERISA.

5. Venue exists in this District under 28 USC §1391 in that the defendants reside in this district as entities that are "subject to the Court's personal jurisdiction with respect to the civil action in question" and the Defendants regularly conduct business in this district including the sale of insurance policies to citizens of this District, including to plaintiff's employer who is located in Morristown, New Jersey.

## THE PARTIES

6. Plaintiff proceeds under a pseudonym "Jane Doe" to protect her privacy due to the sensitive nature of the medical conditions and treatment involved in this matter.

7. Plaintiff is a resident of New Jersey.

8. Plaintiff was, at all relevant times, a participant in an employee health benefit plan regulated by ERISA and pursuant to which plaintiff was entitled to certain health benefits.

9. Defendant, United Healthcare ("UHC") is a corporation that sells insurance products, including health insurance plans and policies, within the State of New Jersey and specifically within this district. On information and belief, UHC administers the plans sold by c-defendant.

10. Defendant, Oxford Health Insurance, Inc. ("Oxford") is a health insurance provider that sells insurance products, including health insurance plans and policies, within the State of New Jersey and specifically within this District.

11. Oxford was the insurer under a health benefit plan covering plaintiff through her employer.

12. UHC/Oxford denied plaintiff's valid claim for benefits under the Plan sold to plaintiff's employer, specifically for reimbursement of the costs incurred by plaintiff for a wig that was requested on or about March 16, 2021. Plaintiff had undergone a number of treatments for her condition, alopecia totalis, that failed and therefore, plaintiff requires a full head prosthesis.

13. This is the first time that plaintiff's claim for a wig has been denied, despite utilizing a wig for the majority of her adult life.

14. The lengthy and tortured history of the claim process with UHC/Oxford, that has been ongoing for over two years, is detailed below.

## FACTS COMMON TO ALL COUNTS

15. To say that plaintiff's interactions with UHC/Oxford related to her request for coverage for a full head prosthesis has a tortured history, is an understatement. By way of background, the following is a timeline of events leading up to the filing of this action.

16. On **June 22, 2021**, a claim was processed for a claim originally submitted on May 28, 2021, for a wig (that was provided on **March 16, 2021**). The claim was originally approved under Claim No. CR 30854274 and was fully paid at $6500. An Explanation of Benefits ("EOB") was provided approving the claim.

17. Fifteen days later on **July 7, 2021**, however, the claim was reprocessed under Claim No. CT 35860184, and reversed. The reason provided for the reversal was that "this service code is not separately reimbursable in this setting."

18. The "setting" issue, was apparently an "office setting" as opposed to a "facility." Unfortunately, no EOB is available for this decision by UHC/Oxford.

19. After my client was made aware of the supposed "facility issue" the claim was once again refiled by the provider, Wigs by Barbara.

20. On information and belief, the refiled claim by Wigs by Barbara was apparently not processed by UHC/Oxford.

21. Later, on **December 1, 2021**, another claim for the exact same date of service was reviewed, this time under Claim No. DA 81300455 and according to the UHC website, $6500 was paid on December 16, 2021.

22. Although showing as paid, when plaintiff clicked the link on the UHC website to view the EOB, it showed that only $1950 was paid, and it also shows an EOB date of **November 24, 2021**.

23. Subsequently on **December 23, 2021**, yet another claim was processed, this time under Claim No. DC 81877247, and a payment was made in the amount of $1,950 after a plan discount of $4,550 was applied.

24. Again, there was no link available from the UHC website to any EOB for this claim; however, on the website it provides a service description of "A wig (replacement hair) of any type)" and provides an explanation for the payment as follows:

> This claim is for services performed by a non-participating (out-of-network) health care provider. Your claim has been processed using your In Network benefits. The allowed amount is established by your benefit plan and is based on a percentage of the provider's billed charges. You are responsible to pay only your

co-insurance, co-pay and deductible. If your provider bills you other amounts, please call Oxford's Member Services Department at the number on the back of your member ID card. (OCMNJ2)

25. After the December claim was processed, on **March 23, 2022**, yet another claim for the March 16, 2021, date of service was processed, this time under Claim No. DE03903896 and for this claim, nothing was paid by UHC/Oxford after a plan discount of $6500 was applied.

26. Again, there was no link to an EOB on the UHC/Oxford website, but the Service Description was "A wig (replacement hair) of any type" and the explanation for non-payment was "Billed charge on claim is not eligible for reimbursement as a separate charge (FWA073)."

27. Next, on **March 25, 2022**, the last claim was processed, this time under Claim No. DF 44457455 and yet again, for the billed amount of $6500.

28. A $6500 plan discount was applied and UHC/Oxford paid nothing. The EOB for this claim stated that: "This claim was already reviewed and processed. If this is a corrected claim, the provider must submit and indicate it is a corrected claim. It must show the original service, charge and any corrections."

29. In addition to the claim history, there were numerous communications between plaintiff and UHC/Oxford all in an effort to make sense out of this claim process.

30. For example, on January 26, 2022, a letter was sent to Wigs By Barbara – the entity providing the wig to plaintiff – requesting certain documents and information, including medical records.

31. In response, plaintiff informed UHC/Oxford that there were no available medical records as she was diagnosed with alopecia totalis approximately 60 years ago, the doctor that diagnosed her was long since dead, and the original medical records no longer existed.

Complaint - 5

32. Plaintiff did, however, provide a doctor's note confirming the diagnosis and that other treatment options had failed, and my client also provided the prescription for the full hair prosthesis from Changebridge Medical.

33. There were also additional communications with UHC/Oxford through the message center on the UHC website, and of particular importance is the message from plaintiff dated March 30, 2022, in which she explains:

> I have explained many times over the last year that I was diagnosed about 60 years ago with Alopecia Totalis (meaning I have no hair on my body in any place - not head, not eyebrows, not eyelashes, not armpits etc. etc.). If it will help, I will send a picture of my bald head. I have been wearing full head wigs for 6 decades. There are no medical records available as that process and the diagnosis occurred in the 1960's (back in South Africa) and all those doctors have passed on.
>
> I had been using a wig firm in Paramus, NJ since 2003 but due to poor service stopped using them in March 2021. On 3/16/21 I ordered the wig which is the subject of the above claim from Barbara Paolercio dba Wigs by Barbara at a cost of $6,500. I paid $3,500 on 3/16/21 and the balance on 4/28/21.

34. Even with this long and tortured claim history, plaintiff did not lose hope. She proceeded to appeal the denial of benefits and in a correspondence dated June 14, 2022, an appeal letter was sent to UHC/Oxford.

35. The appeal letter enclosed copies of the correspondence between UHC/Oxford and plaintiff, medical records, and details regarding prior contracts with providers that plaintiff had been using for years – long before the March 16, 2021, date of service – to show that the claims for wigs had routinely been approved by the plan (or previous plans).

36. In addition, the appeal letter explained that .according to the UHC/Oxford Plan, plaintiff was entitled to coverage for a wig without application of the annual deductible when there is "severe hair loss due to Injury, **Sickness** or as a side effect of the treatment of a disease, such as chemotherapy."

37. The documents submitted to UHC/Oxford made clear that plaintiff had been suffering from alopecia totalis for over 60 years, which has resulted in total hair loss, thus the need for a wig.

38. Plaintiff met all of the necessary criteria for coverage and accordingly, the denial of benefits for the March 16, 2021, date of service was completely improper.

39. In response to the appeal, UHC/Oxford reached out to plaintiff and at that time explained that they believed payment had already been made for the wig.

40. UHC/Oxford explained that there were numerous approvals and denials of benefits, but the net result was that payment was made.

41. Plaintiff was happy to hear the news that payment was approved, but when she reached out to the provider to discuss the findings by UHC/Oxford, she was dismayed to learn that although UHC/Oxford claimed payment was made, the provider had never received payment.

42. Plaintiff yet again reached out to UHC/Oxford to discuss this issue and was then informed that while it looked like payment was made – in other words, it was approved in the UHC/Oxford system – for some reason a check was never issued.

43. UHC/Oxford provided no reasonable explanation as to why the claim would have been approved for payment, but payment was never made.

44. UHC/Oxford then suggested that the claim/appeal be resubmitted and processed – instead of simply correcting the payment mistake.

45. Once again, plaintiff obliged and agreed to resubmit the claim/appeal.

46. Incredibly, on March 27, 2023, plaintiff received a letter from UHC/Oxford requesting that she submit medical records for the appeal, yet again.

47. It was clear at this point that plaintiff was yet again being sent through the ringer – particularly because medical records had already been provided to UHC/Oxford on numerous occasions – but despite this fact, the medical records were provided yet again.

48. Despite the assurances from numerous claims representatives at UHC/Oxford that the reprocessing of the claim was a mere technicality as it had already been approved, by letter dated April 28, 2023, UHC/Oxford yet again denied the claim outright, citing as a rationale "Healthcare Common Procedure Coding System (HCPCS_ code A9282 NU (1 Unit) remains not supported. The code is included in the payment of the other services performed on the same date of service, for the same patient, and by the same provider and is not separately reimbursable."

49. This was the same excuse/explanation that UHC/Oxford had provided to plaintiff nearly two years prior. The same excuse/explanation that plaintiff debunked on numerous occasions, and that based on the numerous communications with UHC representatives, that plaintiff believed she had finally been resolved. Instead, plaintiff was moved right back to square one.

50. Plaintiff has tried over and over to make some headway with UHC/Oxford on this now almost two-and-a-half-year-old claim, including going through multiple levels of appeals, approvals, denials, reapprovals, denials, appeal requests, denials, and redundant requests for information.

51. Now, by this action, plaintiff is seeking the assistance of the Court to finally receive the paid for benefits that she is entitled to.

**FIRST CLAIM FOR RELIEF FOR DENIAL OF BENEFITS UNDER ERISA**

52. Plaintiff repeats the allegations contained in each of the preceding paragraphs of this Complaint.

53. A claim for benefits was properly submitted to UHC/Oxford in March 2021, by plaintiff seeking payment for a wig that was necessary due to plaintiff's diagnosis with alopecia totalis.

54. UHC/Oxford improperly denied the claim for benefits, and there is a total amount due and outstanding for this claim of $6500.

55. UHC/Oxford wrongfully denied the claim for myriad reasons that were ever-changing over the course of this now two year plus claims process.

56. The positions taken by UHC over the years, have been ever evolving and included at times approving the claim supposedly paying the claim, seeking additional information on the claim (when that information was provided on numerous occasions), and then eventually a wrongful denial of the claim.

57. After the wrongful denial, plaintiff has exhausted all administrative remedies and has engaged in a constant barrage of communications with UHC on this $6500 claim.

58. Further, to the extent any additional administrative remedies are or were necessary, continuing to engage in the administrative process would be futile, particularly because, as described above, the claim has been submitted multiple times on multiple claim numbers and the bases for denial has been ever-changing since the claims inception.

59. Further, after a nearly two year claim process, UHC/Oxford had apparently revereted back to the original claim denial that had been debunked on numerous occasionts by plaintiff.

60. The positions taken by UHC/Oxford in denying or underpaying the claims were not only contrary to the plan documents, but they were also contrary to the positions that

UHC/Oxford had already taken on multiple occasions during the plan year and in prior plan years at which time UHC/Oxford had routinely paid the exact same claims.

61. As a direct and proximate result of the denial of valid medical benefits, plaintiff has been damaged in the amount of the denied benefits or a total sum of $6500.

62. In addition, as a further direct and proximate result of this improper denial of medical benefits, plaintiff, in pursuing this action, has been required to incur attorneys fees and costs. Pursuant to 29 U.S.C. Sec. 1132(g)(1), plaintiff is entitled to have such fees and costs paid by UHC/Oxford.

**WHEREFORE**, plaintiff demands relief under ERISA as follows:

a. For compensatory damages, including all amounts owed to date for the claim totaling $6500;

b. A declaration that UHC/Oxford was and is required to pay for the benefits at issue;

c. For attorneys fees as permitted by law;

d. Interest and costs of suit;

e. Such other relief that the Court deems appropriate.

Dated:  August 3, 2023                **THE MILUN LAW FIRM, LLC**
                                       Attorneys for Plaintiff


By:    /s/ *Ryan Milun*
       RYAN MILUN
       THE MILUN LAW FIRM, LLC
       20 Commerce Drive, Suite 135
       Cranford, NJ 07016
       Ph: 862-702-5010 ex 1001
       Ryan.milun@milunlaw.com

## RULE 11 CERTIFICATION

RYAN MILUN declares as follows:

I am an attorney and owner of the law firm of The Milun Law Firm, LLC, the attorneys for plaintiff in this action. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3, 2023

*/s/ Ryan Milun*
RYAN MILUN